**Stanley WRIGHT et al., Appellants,**

v.

**TEXAS SOUTHERN UNIVERSITY, etc., et al., Appellees.**

**No. 25258.**

United States Court of Appeals
Fifth Circuit.

April 9, 1968.

---

Barbara A. Morris, Robert L. Carter, New York City, Herbert O. Reid, Washington, D. C., Weldon H. Berry, Houston, Tex., for appellants.

Pat Bailey, Asst. Atty. Gen., Crawford C. Martin, Atty. Gen., Nola White, First Asst. Atty. Gen., A. J. Carubbi, Jr., Executive Asst. Atty. Gen., J. C. Davis, Austin, Tex., for appellees.

Before COLEMAN, AINSWORTH and DYER, Circuit Judges.

COLEMAN, Circuit Judge:

In Dixon v. Alabama, 5 Cir., 1961, 294 F.2d 150, this Court held that in matters of disciplinary action a student attending a tax supported institution of higher learning is entitled to notice that he is charged with misconduct, including a statement of the charges alleged in justification of anticipated action against him. Moreover, the student must be given the names of the witnesses against him and must be informed of the nature of their proposed testimony. Lastly, he should be given *the opportunity* to present his defense, orally or in writing, after which the findings of the disciplinary body should be presented in a report available for his inspection.

██ This does not mean that the student is entitled to the formality of a trial, in the usual sense of that term, but simply requires that he must be given a fair and reasonable opportunity to make his defense to the charges and to receive such a hearing as meets the requirements of justice, both to the school and to himself. In short, the student at the tax supported institution cannot be arbitrarily disciplined without the benefit of the ordinary, well recognized principles of fair play.

█ It is equally well settled, we think, that by seeking admission to and obtaining the benefits of attending a college or university the student agrees that he will abide by and obey the rules and regulations promulgated for the orderly operation of that institution and for the effectuation of its purposes, State ex rel. Sherman v. Hyman, 180 Tenn. 99, 171 S.

W.2d 822 (1942); Cornette v. Aldridge, 408 S.W.2d 935 (Tex.Civ.App., 1966, error for ref. n. r. e.).

We know of no case which holds that colleges and universities are subject to the supervision or review of the courts in the uniform application of their academic standards. Indeed, *Dixon* infers the contrary.

In this context, appellants, eight in number, former students of Texas Southern University, at Houston, filed suit on September 8, 1967, alleging that they had been denied admission to that institution at the fall term in violation of their constitutional rights in that the denial was grounded upon their suspension at the end of the spring term for participating in several peaceable assemblies protected by the First Amendment. It was further asserted that these suspensions were in violation of the due process clause of the Fourteenth Amendment because appellants were not given notice and an opportunity to be heard.

Three days later, the District Court issued a temporary restraining order, commanding appellees to permit appellants to register at the University pending a hearing on the merits. Two days later, including a night session of the court, the hearing was held. At its close, appellees moved for dismissal of the action and dissolution of the temporary restraining order. On September 15, 1967, these motions were granted and this appeal followed. We affirm the action of the District Court.

█ The trial court found appellants Franklin, Waller, Nichols, Parker, and Freeman to be scholastically ineligible for admission to the fall term. Franklin had failed 12 of the 13 hours for which he had been enrolled; the others failed all courses. Under the rules and regulations of the University, applicable to all students alike, these appellants were thus subject to mandatory suspension until January, 1968. The court significantly noted, "Counsel for Plaintiffs has not contended that suspension on this ground violates Plaintiffs' constitutional rights". In any event, the findings in this regard

are supported by the record and there is no rational basis for holding that they were clearly erroneous.

Only Wright, Richards, and Lowe remain for further consideration. As to them, in language we cannot improve upon, the District Court found and concluded as follows:

"Concerning the Plaintiff Wright, Dean Jones testified that on March 27, 1967, it was reported to him that Wright had violated one of the University regulations. On April 18, during a period of serious unrest and turbulence on the campus, Dean Jones stated that he *personally* observed Wright on the campus after curfew hours. He stated that he confronted Wright and a companion and asked them to leave, but that they refused to do so. He then asked Wright to come to his office to talk with him about the incident. Wright never came. Later, Dean Jones made attempts to contact Wright by mail. He could find no mailing address, although each student was required by University regulations to keep the school informed of his mailing address and any changes thereof. Dean Jones also went to Wright's father to inquire about Wright's address, but was told by the father that he did not know himself. Wright voluntarily withdrew from the University on May 2. He was notified by certified mail on or about May 27 that he would not be permitted to re-enter Texas Southern.

"Concerning the Plaintiff Richards, Dean Jones testified that on January 18, 1967, he personally called at the dormitory where Richards resided to request a conference concerning a reported violation of University regulations. A conference with Richards was held, and Richards was told that he would be under observation for the remainder of the semester. On April 30, 1967, Dean Jones *personally* observed Richards exhorting students to block the entrance way to a campus building so as to prevent entry by the faculty and students alike. A letter was then sent to Richards asking that he report to the Dean for a conference, but it was returned undelivered. Although Richards had changed his mailing address, he, like Wright, failed to notify the University. Richards was notified after the close of the spring term that he would not be permitted to re-enter Texas Southern.

"I think this evidence clearly demonstrates that diligence was exercised in attempting to give proper notice to both Wright and Richards. Wright was given personal notice at a time when he was in the act of violating a valid University regulation. Certainly that situation itself should have impressed him with the necessity of compliance with the Dean's command to visit his office. Moreover, written communications were sought to be delivered to both Wright and Richards. Only because of their failure to comply with a valid University regulation was delivery of the communications unsuccessful. The Dean of Students, I am convinced, exercised his best efforts to inform these two students of the nature of the University's complaints against them. *I do not think more is required.* To now order Defendants to reinstate these Plaintiffs subject to holding a hearing on their grounds for suspension would, it seems to me, be tantamount to condoning the irresponsible attitude exhibited by these Plaintiffs. It would be unreasonable indeed for this Court to hold that a University could not take disciplinary action against students who could not be contacted although diligent attempts were made, particularly where their whereabouts were not disclosed to the University in violation of a valid regulation. In a day where the population of some of our State Colleges and Universities now approaches that of small cities, where there is a decided increase in off-campus residency, and where there are in many instances no attendance rules imposed on the students, to require more of University officials than was done here, would in many cases render University officials powerless to command or rebuke the fanatic, the irritant, the malingerer, the rabble rouser.

"Plaintiff Lowe was allowed leave to join as a party plaintiff on September 12.

After leave was granted, he joined in the allegations of the other Plaintiffs, thereby limiting the scope of his own cause of action. The undisputed evidence shows that Lowe was given notice to report to Dean Jones' office and that he did. His conduct during the spring semester was discussed with Dean Jones and he was given the opportunity to speak in his own defense. Lowe was then referred by Dean Jones to the office of the President, and Lowe then discussed with the President the University's complaints against him. After this, Dean Jones and the President conferred and arrived at their decision to deny Lowe re-admission to Texas Southern.

"I find no evidence to indicate that the hearing afforded Lowe was inadequate. Lowe has offered no evidence concerning the hearing, and on such a record I do not think that this or any other Court should substitute its judgment for that of the proper University officials. From what appears of record, Lowe was given a fair opportunity to show his innocence and explain his conduct. This was sufficient."

Again, the factual findings, are not clearly erroneous and we find no error in the application of the law. By a violation of regulations Wright and Richards simply frustrated the notice and hearing process. They circumvented the rights which they now seek to vindicate. They cannot now be heard to complain of an impossibility which was of their own creation.

Lowe was not summarily or arbitrarily expelled. He was allowed a hearing before both the dean and the president of the University. He offered no evidence to establish the inadequacy of such hearings or to show that he was prejudiced by the lack of more.

In this state of the record we find no justification for further judicial intrusion upon University operations.

Since the District Judge was manifestly right in his disposition of this controversy we consider it unnecessary to discuss the further point, raised by the appellees, that appellants afterwards sought relief in the state courts, failed, and took no appeal.

Affirmed.