IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
ASSIGNED ON BRIEFS JUNE 6, 2006

## MICHAEL MOSBY v. ROLAND COLSON, ET AL.

**Direct Appeal from the Circuit Court for Lauderdale County**
**No. 6012      JosephWalker, Judge**

---

**No. W2006-00490-COA-R3-CV - Filed August 14, 2006**

---

The plaintiff, an inmate in the custody of the Tennessee Department of Correction, filed a pro se lawsuit against numerous prison officials and personnel of the department pursuant to 42 U.S.C. § 1983 in the Circuit Court of Lauderdale County, Tennessee.  Therein, the plaintiff complained that prison officials terminated his prison job in retaliation for his filing numerous grievances against them.  The plaintiff alleged violations of the United States Constitution, Tennessee statutes, and various policies of the Tennessee Department of Correction.  In response, the attorney general, acting on behalf of the defendants, filed a motion to dismiss for failure to state a claim for which relief could be granted.  In turn, the plaintiff filed what amount to numerous amended complaints to allege new allegations or to add additional defendants. The trial court subsequently granted the defendants' motion to dismiss and denied the plaintiff leave to amend his complaint.  The trial court also held that the plaintiff could proceed *in forma pauperis* on appeal.  On appeal, the plaintiff asks this Court to review whether the trial court erred in (1) granting the defendants' motion to dismiss, (2) denying the plaintiff leave to amend his complaint, (3) denying the plaintiff's request for injunctive relief. The plaintiff also asks this Court to determine whether he should be allowed to proceed *in forma pauperis* despite the fact that the federal courts previously dismissed three or more of his lawsuits for being frivolous or failing to state a claim.  We affirm the trial court's decisions to grant the defendants' motion to dismiss and to deny the plaintiff's request for injunctive relief.  While the plaintiff was entitled to file an amended complaint without leave of court, we find no error in the trial court's refusal to allow the plaintiff to submit his amended complaints.  Finally, we hold that his lawsuit should have been dismissed at the trial level pursuant to section 41-21-801 *et seq*. of the Tennessee Code, which governs lawsuits filed by inmates.  Accordingly, we find that the present appeal is so utterly lacking in merit that we remand this case to the trial court for the assessment of all costs, expenses, and fees associated with this lawsuit against the plaintiff in accordance with section 41-21-801 *et seq*. of the Tennessee Code.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Michael Mosby, Henning, TN, *pro se*

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Michael B. Schwegler and Kellena Baker, Assistant Attorney General, Nashville, TN, for Appellees

**OPINION**

**I.**

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Michael Mosby ("Mosby" or "Appellant") is an inmate in the custody of the Tennessee Department of Correction ("TDOC") serving an eighteen year prison sentence. On October 27, 2005, Mosby, while being housed at the West Tennessee State Penitentiary ("Prison") in Henning, Lauderdale County, Tennessee and acting as a pro se litigant, filed the following handwritten documents in the Circuit Court of Lauderdale County:

1. Notice of Filing;
2. Civil Rights Complaint, which contained accompanying exhibits;
3. Motion for Preliminary Injunction;
4. Affidavit of Michael Mosby;
5. Memorandum of Law in Support of Motion for a Preliminary Injunction;
6. Inmate Affidavit Pursuant to T.C.A. §§ 41-21-801, 41-21-805, which contained accompanying exhibits;
7. Proof of Satisfied Fees;
8. Pleading Setting out Parole, Earliest Eligibility, Total Sentence Imposed, which contained accompanying exhibits;
9. Plaintiff's Request for the Production of Documents;
10. Request for Admissions; and
11. Notice of Amended Complaint.

These documents set forth a chain of events that served as the impetus for Mosby filing the present action in the circuit court.

## A.
### Civil Rights Complaint

In his Civil Rights Complaint, Mosby named the following TDOC employees, in both their individual and official capacities, as defendants: Roland D. Colson, Assistant Commissioner of Operations; Henry Steward, Deputy Warden at the Prison; Margaret Smith, Unit 2 Unit Manager at the Prison; Norman Layne, Unit 2 Case Manager at the Prison; Larry Winbush, Unit 2 Inmate Relations Coordinator at the Prison; Stacie Alexander, Inmate Grievance Chairperson at the Prison; Paul Conquest, Chaplain and member of the Inmate Grievance Committee at the Prison; Steve Harvell, Corrections Officer and member of the Inmate Grievance Committee at the Prison; and B. Cornwell, whose position is not set forth in the record (collectively referred to as the "Defendants" or "Appellees").[1]  In his Notice of Amended Complaint, Mosby provided notice of his intention to file an amended complaint at a later date to add "Corporal Terry Bentley, J. Hayles, B. Person and Nurse Privit" as defendants in the action.

In February 2005, Mosby apparently had been assigned to work as a "rockman" in Unit 2 at the Prison.  At some point, Prison officials decided that Mosby should no longer be allowed to perform this job.  According to Mosby, an unidentified Prison official informed him that the reason he was no longer allowed to work as a "rockman" was because Prison officials did not appreciate his frequent use of the Prison's inmate grievance system.  Thereafter, Mosby sent several letters to TDOC officials asking for an explanation as to why Unit 2 employees were not allowing him to work as a "rockman."

In March or April 2005, Mosby filed a grievance against Defendant Winbush for "denial of equal opportunity."  Mosby alleged that Defendant Winbush subsequently told him that he "had better drop the grievance."  As a result, Mosby filed another grievance against Defendant Winbush for "threatening an offender."  According to Mosby, he met with Defendant Winbush and agreed to dismiss the grievance if he were allowed to return to work as a "rockman."  Mosby apparently was chosen to work as a "rockman" shortly thereafter.  Mosby alleged that, while he was working, Defendant Alexander instructed a supervising corrections officer to "fire" him "if he sneezes to hard."

In his complaint, Mosby alleged that on April 22, 2005, Defendant Cornwell told him that "your cousin lied on me."  Mosby also asserted that Defendant Cornwell was placed in charge of his area on April 29, 2005 and refused to provide him with a shower.  According to Mosby, Defendant Cornwell's supervisor had to order her to provide Mosby with a shower.  He further alleged that on May 6, 2005, Defendant Cornwell once again refused to provide him with a shower after he returned from his recreational time.  That same day, Mosby filed a grievance against Defendant Cornwell for denying him a shower on both dates.  Mosby stated in his complaint that Defendants Smith and

---

[1] A page is missing from that portion of the complaint in the record describing the employees' functions at the Prison, which appears to include a description of B. Cornwell's position.

Layne refused to investigate the allegations in his grievance and told him that his failure to cooperate with Unit 2 staff would place his job at risk.

Mosby subsequently requested a grievance hearing, which was held on May 19, 2005 before the Prison's Inmate Grievance Committee and was partially composed of Defendants Alexander, Conquest, and Harvell. According to Mosby, he eavesdropped on the committee's deliberations and overheard Defendant Alexander propose a "job drop." He alleged that other members of the committee quickly agreed without further deliberation and that Defendant Alexander used an "intimidating tone of voice" toward an inmate serving on the committee who suggested that the recommendation was not fair. The committee subsequently issued its findings, which included a recommendation for a "non-disciplinary job drop." Defendant Steward affirmed the decision. Mosby appealed the decision, and Defendant Colson denied his administrative appeal.

In his complaint, Mosby alleged that, in response to another inmate's unrelated grievance, Defendants Layne and Smith stated "that having a job while on segregation increases an inmate[']s chances of being released from segregation." He stated that, armed with this knowledge, Defendants Colson, Steward, Smith, Layne, Alexander, Conquest, and Harvell sought to terminate his job in an effort to ruin his chances for release from segregation and for early parole.

On June 16, 2005, Mosby asked Defendant Cornwell for permission to use the telephone to make his allotted monthly telephone call. Mosby alleged that, when he was unable to secure a connection, he instructed Defendant Cornwell to log the call as "incomplete" so that he could retain his monthly phone privilege. According to Mosby, Defendant Cornwell agreed to make the notation in the telephone log book. When he attempted to place another telephone call on June 20, 2005, Mosby alleged that the corrections officer told him that Defendant Cornwell entered a notation in the log book showing that he used the telephone on June 16, 2005 for thirty minutes.

As a result of being denied telephone access, Mosby filed a grievance against Defendant Cornwell for "falsifying Unit 2 Bravo's Telephone log book." Defendant Smith responded to the grievance by filing a written report stating that telephone access was a "continuous situation" with Mosby and that he was allowed to use the telephone more than once per month. Mosby alleged that he instructed Defendant Alexander to obtain the telephone records for the prison from June 16, 2005 to prove that Defendant Cornwell falsified the log book. At the grievance hearing held on July 5, 2005, Mosby asked Defendant Alexander about the records, but he alleged that Defendant Alexander stated that she did not check the records. Following the hearing, the Inmate Grievance Committee agreed with Defendant Smith's report, and Defendant Steward affirmed the decision. Mosby appealed the decision, and Defendant Colson denied the appeal. Mosby alleged that Defendants Colson, Steward, Smith, Layne, and Alexander, by overlooking Defendant Cornwell's alleged misconduct, refused to perform a meaningful investigation of the incident.

On July 6, 2005, Mosby filed yet another grievance complaining about Defendant Alexander's alleged conduct at the July 5, 2005 grievance hearing. Further, he alleged that Defendant Alexander asked Defendant Winbush prior to the hearing, "I thought ya'll were going to

fire him." He also asserted that Defendant Layne asked him "We haven't fired you yet?" and that Defendant Layne told him that Defendant Alexander had been inquiring as to whether Mosby had been fired. Following a hearing on this most recent grievance, the committee recommended that Mosby be terminated from his prison job. Defendant Steward concurred with the result, and Defendant Colson subsequently denied Mosby's appeal.

According to Mosby, Defendant Cornwell "falsified the Unit 2 Bravo Segregation Sheets" by writing that he refused a shower on June 23, 2005 because he wanted to have his recreation time first. As a result, Mosby filed a grievance on June 23, 2005. The Inmate Grievance Committee convened a hearing on July 12, 2005 and found that Mosby refused a shower on the date in question. Defendant Steward concurred in the result, but he instructed units to allow inmates recreating time before they took a shower. Dissatisfied with the decision, Mosby appealed, and Defendant Colson denied the appeal.

On July 21, 2005, Mosby filed a grievance alleging that Defendant Cornwell falsified documents by incorrectly documenting that Mosby received his recreation time. The committee conducted a hearing and recommended that Mosby receive recreation and a shower on first shift only. Defendant Steward concurred, and Defendant Colson denied Mosby's subsequent appeal.

Finally, on July 27, 2005, Mosby filed a grievance alleging that some of the defendants retaliated against him for filing grievances by having him fired from his prison job. The Inmate Grievance Committee held a hearing and found that this allegation did not constitute a grievance under TDOC policy. Defendant Steward concurred with the committee's assessment. Defendant Colson denied Mosby's subsequent appeal and stated that the grievance constituted "an abuse of the grievance procedures."

The present lawsuit followed, wherein Mosby claimed that the aforementioned facts constitute violations of the following:

> 42 U.S.C. § 1983 alleging retaliation in violation of the First Amendment of the United States Constitution, Substantive Due Process, Indirect Participation, Acts of Omissions, State Created Protected Interest, Conspiracy, Denial of equal protection of the law, T.C.A. § 41-1-103, 41-21-404, 4-3-603, 4-3-606, Tennessee Department of Corrections Policy 501.01 section VI(E), T.D.O.C. Policy 505.07 Section VI H(1)(9), 42 U.S.C. § 1997 and 28 C.F.R. § 40 statutory requirements, regulations and set minimum standards for grievance procedures.

In the various documents initially filed in the circuit court, Mosby sought a declaratory judgment, injunctive relief, compensatory damages, and punitive damages.

## B.
### *Defendant's Motion to Dismiss & Mosby's Efforts to Amend his Complaint*

On December 21, 2005, after receiving an extension of time in which to respond to the allegations lodged by Mosby, the Defendants, represented by the Attorney General, filed a motion to dismiss pursuant to Rule 12.02(6) of the Tennessee Rules of Civil Procedure for failure to state a claim for which relief could be granted. In their motion and accompanying memorandum of law, the Defendants asserted that Mosby could not establish a cause of action under any of his theories of recovery. Further, they asked the circuit court to deny Mosby *in forma pauperis* status by arguing that, pursuant to section 41-21-807 of the Tennessee Code, Mosby could not proceed *in forma pauperis* due to previously filed lawsuits that were deemed frivolous by the federal courts. Specifically, the Defendants stated that "the plaintiff is barred from pursuing this claim *in forma pauperis* until the filing fee is fully paid." In support of this assertion, the Defendants attached various orders from the federal district courts as exhibits to their motion.

In response, Mosby filed a Motion for Leave to File an Amended Complaint pursuant to the Federal Rules of Civil Procedure to state a cause of action for emotional injuries due to Defendants Alexander, Conquest, and Harvell failing to secure certain evidence favorable to his cause. The Defendants filed a response in opposition to Mosby's motion to amend his complaint. Thereafter, Mosby filed a Notice of Supplemental Complaint providing notice of his intention to add "Corrections Employee Cesack as a defendant for violation of his First Amendment rights with relationship to the claims in the original complaint." He also filed a Motion for Leave to File Plaintiff's Amended Complaint, again pursuant to the Federal Rules of Civil Procedure, asking to add "Terry Bentley, Jason Hayles and Nurse Privit" as defendants. Accompanying this motion was an Amended Complaint setting forth new allegations, which included causes of action based on perceived violations of Mosby's First, Eighth, and Fourteenth Amendment rights under the United States Constitution. This was followed by Mosby's Request for Production of Documents with numerous exhibits attached to the request.

## C.
### *Ruling of the Trial Court*

On February 1, 2006, the trial court entered an order dismissing all of Mosby's claims against the Defendants with prejudice for failure to state a claim. The trial court also held: "Plaintiff is specifically NOT DESIGNATED INDIGENT FOR THE PURPOSES OF THIS LITIGATION AND APPEAL and is required to pay all outstanding filing fees and litigation taxes as would an ordinary litigant." On February 23, 2006, Mosby filed his Notice of Appeal and Motion for Leave to Proceed In Forma Pauperis on Appeal with the trial court. On February 24, 2006, the trial court entered a Final Order Pursuant to Tenn. R. Civ. P. 54 denying Mosby's motions to amend his complaint and reaffirming its prior dismissal of all claims against the Defendants. Further, the trial court provided that "Plaintiff remains DESIGNATED AS NON-INDIGENT for the purposes of this litigation and

any appeal."[2] On March 3, 2006, however, the trial court entered an order amending its previous order to reflect that it was granting Mosby's motion to proceed *in forma pauperis* on appeal.

## II.
### ISSUES PRESENTED FOR REVIEW

Mosby brings the present appeal as a pro se litigant. In his handwritten brief filed in this Court, he presents, as we perceive them, the following issues for our review:

1. Whether the trial court erred in granting the Defendants' motion to dismiss his complaint for failure to state a claim upon which relief could be granted;
2. Whether the trial court erred when it denied Mosby leave to amend his complaint;
3. Whether the trial court erred when it denied Mosby's request for injunctive relief; and
4. Whether Mosby should be allowed to proceed *in forma pauperis* in light of the fact that the United States District Courts dismissed three or more of his previous lawsuits for being frivolous or for failing to state a claim.

## III.
### DISCUSSION

#### A.
#### *Motion to Dismiss*

"A Tenn. R. Civ. P. 12.02(6) motion admits the truth of all the relevant and material factual allegations in the complaint but asserts that no cause of action arises from these facts." ***Utley v. Tenn. Dep't of Corr.***, 118 S.W.3d 705, 712 (Tenn. Ct. App. 2003) (citing ***Davis v. The Tennessean***, 83 S.W.3d 125, 127 (Tenn. Ct. App. 2001); ***Pendleton v. Mills***, 73 S.W.3d 115, 120 (Tenn. Ct. App. 2001)). The function of the motion "is to test the sufficiency of the complaint, not the strength of the plaintiff's evidence." ***Willis v. Tenn. Dep't of Corr.***, 113 S.W.3d 706, 710 (Tenn. 2003) (citing ***Doe v. Sundquist***, 2 S.W.3d 919, 922 (Tenn. 1999); ***Riggs v. Burson***, 941 S.W.2d 44, 47 (Tenn. 1997)). "Dismissal under Tenn. R. Civ. P. 12.02(6) is warranted only when the alleged facts will not entitle the plaintiff to relief or when the complaint is totally lacking in clarity and specificity." ***Pendleton v. Mills***, 73 S.W.3d 115, 120 (Tenn. Ct. App. 2001) (citing ***Dobbs v. Guenther***, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992)). "The trial court's dismissal of a complaint pursuant to Rule 12.02(6) presents a question of law that we review de novo without a presumption of correctness to the conclusions reached below." ***Conley v. State***, 141 S.W.3d 591, 594–95 (Tenn. 2004) (citing ***Leach v. Taylor***, 124 S.W.3d 87, 90 (Tenn. 2004)).

---

[2] Although Mosby filed his notice of appeal prematurely, "[a] prematurely filed notice of appeal shall be treated as filed after the entry of the judgment from which the appeal is taken and on the day thereof." TENN. R. APP. P. 4(d) (2005).

When construing Mosby's complaint on appeal, we are cognizant of the fact that he is proceeding as a pro se litigant. "*Pro se* litigants who invoke the complex and sometimes technical procedures of the courts assume a very heavy burden." *Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988) (citing *Gray v. Stillman White Co.*, 522 A.2d 737, 741 (R.I. 1987)). Parties choosing to represent themselves, however, remain entitled to the fair and equal treatment of the courts. *Hodges v. Tenn. Att'y Gen.*, 43 S.W.3d 918, 920 (Tenn. Ct. App. 2000) (citing *Paehler v. Union Planters Nat'l Bank, Inc.*, 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997)). "*Pro se* litigants are not, however, entitled to shift the burden of litigating their case to the courts." *Whitaker v. Whirlpool Corp.*, 32 S.W.3d 222, 227 (Tenn. Ct. App. 2000) (citing *Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1194–95 (D.C. Cir. 1983)). Pro se litigants must comply with the same substantive and procedural law that represented parties must adhere to. *Hodges*, 43 S.W.3d at 920–21; *Irvin*, 767 S.W.2d at 652.

Thus, pro se litigants are entitled to the same liberality of construction that our courts afford under the Tennessee Rules of Civil Procedure to represented parties. *Young v. State*, No. E1999-1968-COA-R3-CV, 2000 Tenn. App. LEXIS 404, at *9 (Tenn. Ct. App. June 21, 2000) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). We will "construe the complaint liberally in favor of the plaintiff by taking all factual allegations in the complaint as true, and by giving the plaintiff the benefit of all the inferences that can be reasonably drawn from the pleaded facts," *Pendleton v. Mills*, 73 S.W.3d 115, 120 (Tenn. Ct. App. 2001) (citations omitted), looking to the substance of the complaint rather than its form, *Kaylor v. Bradley*, 912 S.W.2d 728, 731 (Tenn. Ct. App. 1995) (citing *Usrey v. Lewis*, 553 S.W.2d 612, 614 (Tenn. Ct. App. 1977)).

On appeal, Mosby argues that the trial court erred in granting the Defendants' motion to dismiss certain claims raised in his complaint. "[P]risoners do not shed all their constitutional rights at the prison gates." *Utley v. Tenn. Dep't of Corr.*, 118 S.W.3d 705, 713 (Tenn. Ct. App. 2003) (citing *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974)). As the United States Court of Appeals for the Sixth Circuit has explained:

> Section 1983, 42 U.S.C. § 1983, provides a remedy for constitutional violations committed by state actors. In this case, the alleged constitutional violation is in the form of a claim that government officials retaliated against the plaintiffs for exercising their constitutional rights. It is well established that government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999) (citations omitted). "The essence of such a claim is that the plaintiff engaged in conduct protected by the Constitution or by statute, the defendant took an adverse action against the plaintiff, and this adverse action was taken (at least in part) because of the protected conduct." *Id.* at 386–87. In turn, we will address the claims discussed by Mosby in his brief filed with this Court.

**1.**
**First Amendment & Fourteenth Amendment Claims**

In his Civil Rights Complaint, Mosby alleged that the Defendants retaliated against him in violation of his rights guaranteed by the First Amendment to the United States Constitution. The First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and *to petition the Government for a redress of grievances*." U.S. CONST. amend. I (emphasis added). In his brief, Mosby maintains that the Defendants' action in firing him from his prison job for writing letters and filing grievances against them amounts to retaliation for exercising his First Amendment right "to petition the Government for a redress of grievances."

"First Amendment rights, like many other rights, are circumscribed in the prison setting." *Thaddeus-X*, 175 F.3d at 390 (citing *Turner v. Safley*, 482 U.S. 78, 89, 96 (1987)). "The role of the judiciary requires weighing the interests of the prison as an institution (in such matters as security and effective operation) with the constitutional rights retained by the inmates." *Id.* While prisoners certainly do not have greater First Amendment rights than the public in general, the First Amendment interest that is of central importance to a prisoner is the right to access the courts. *Id.* at 388; *see also Ward v. Dyke*, 58 F.3d 271, 275 (6th Cir. 1995). While prisoners must be afforded access to the courts to pursue a claim for a deprivation of their rights, the constitutional principle of standing requires that an inmate show the existence of an actual injury. *Thaddeus-X*, 175 F.3d at 394 (citing *Lewis v. Casey*, 518 U.S. 343, 349 (1996)). Moreover, a prisoner bears the burden of proving the following elements of a First Amendment retaliation claim:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two — that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Id.* (citations omitted).

Mosby's complaint does not state a claim for retaliation due to the exercise of his First Amendment rights because the facts in his complaint fail to establish the first element of such claim. While a prisoner has a First Amendment right to access the courts for a redress of grievances, "the scope of this right for prisoners is limited to filing cases in court, however, not in filing grievances." *Rienholtz v. Campbell*, 64 F. Supp. 2d 721, 730 (W.D. Tenn. 1999); *see also Lewis v. Casey*, 518 U.S. 343, 355 (1996) ("The tools [*Bounds v. Smith*, 430 U.S. 817 (1977)] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is

simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." (emphasis in original)).

"In order to make out a claim for denial of access to court, a prisoner must demonstrate that the alleged obstructive conduct actually hindered his or her efforts to present a legal claim to the court." *Pendleton v. Mills*, 73 S.W.3d 115, 124 n.10 (Tenn. Ct. App. 2001) (citing *Lewis v. Casey*, 518 U.S. 343, 350 (1996)). Mosby does not allege that he has been denied access to the courts. Nor could he since he has filed the instant lawsuit in state court as well as several others in the federal courts. Thus, Mosby's complaint failed to state a claim for retaliation due to the exercise of any constitutionally protected First Amendment right.

The foundation for Mosby's First Amendment claim is that he lost his job in alleged retaliation for filing grievances against the Defendants. This argument provides an interpolation into Mosby's next constitutional argument. He also contends that his complaint sets forth a sufficient cause of action for violation of his rights guaranteed by the Fourteenth Amendment for, as we perceive them, the following reasons:

1. Prison and TDOC policy allow inmates to file grievances, therefore, he has a constitutionally protected interest in such procedures. Since he was allegedly retaliated against for filing grievances, his Fourteenth Amendment rights have been violated;
2. He has a constitutionally protected liberty interest in his prison job; and
3. Prison officials, by terminating his prison employment, deprived him of the expectation that his segregation and term of imprisonment would be shortened by working.

Taking the facts in his complaint to be true, as we must, we hold that Mosby's complaint fails to state a claim for a violation of the Fourteenth Amendment as well.

A prisoner has no constitutionally protected interest in prison employment. *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989); *see also Henderson v. Mills*, No. W2005-01040-COA-R3-CV, 2005 Tenn. App. LEXIS 556, at *18 (Tenn. Ct. App. Sept. 1, 2005); *Blackmon v. Campbell*, No. 01-A-01-9807-CH-00361, 1999 Tenn. App. LEXIS 111, at *4–5 (Tenn. Ct. App. Feb. 23, 1999). Nor does a prisoner have a constitutionally protected right to file prison grievances. *Rienholtz*, 64 F. Supp. 2d at 730; *Phillips v. Shamshad*, No. W2001-02508-COA-R3-CV, 2002 Tenn. App. LEXIS 612, at *13 (Tenn. Ct. App. Aug. 16, 2002); *Reid v. Lutche*, No. M1997-00229-COA-R3-CV, 2001 Tenn. App. LEXIS 46, at *11–12 (Tenn. Ct. App. Jan. 24, 2001); *McGowan v. Farr*, No. E2000-02519-COA-R3-CV, 2001 Tenn. App. LEXIS 652, at *14–15 (Tenn. Ct. App. Aug. 30, 2001). Even if the ability to file grievances rose to the level of a constitutionally protected right, Mosby certainly has never been denied the opportunity to file grievances as evidenced by the numerous grievances he filed against the Defendants in this case. Finally, a prisoner has no constitutionally protected right to early parole, *Gore v. Tenn. Dep't of Corr.*, 132 S.W.3d 369, 372 (Tenn. Ct. App. 2003), or to be incarcerated at a particular facility and/or to be held in a specific security classification, *Henderson*, 2005 Tenn. App. LEXIS 556, at *18.

Accordingly, we affirm the trial court's decision to dismiss the First Amendment and Fourteenth Amendment aspects of Mosby's complaint for failure to state a claim.

## 2.
### Claims Against Defendants Steward and Colson

Mosby argues that the trial court erred in dismissing his complaint as it related to Defendants Steward (Prison's Deputy Warden) and Colson (TDOC Assistant Commissioner of Operations) because it established that they "created a policy or custom under which unconstitutional practices occurred, or allowed such a policy to continue;" knew of unconstitutional practices and failed to remedy them; or "rubber stamped" the constitutional violations by other defendants.

The United States Court of Appeals for the Sixth Circuit has stated:

> In *Hays v. Jefferson County*, 668 F.2d 869 (6th Cir. 1982), we held that the § 1983 liability of supervisory personnel must be based on more than the right to control employees. Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the *unconstitutional conduct* of the offending subordinate. *Hays*, 668 F.2d at 872-74.

*Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984) (emphasis added).

The essence of Mosby's arguments regarding these defendants is that they failed to prevent subordinate employees from terminating his prison employment. Nowhere in his complaint does Mosby allege that Defendants Steward and Colson either encouraged or directly participated in the termination decision. Moreover, we previously discussed the fact that the actions of subordinates in terminating Mosby's prison job did not constitute the deprivation of a constitutionally protected right. *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989). Accordingly, we find no error in the trial court's decision to dismiss the complaint as to these two defendants.

## 3.
### Other Claims Raised in the Complaint

We are cognizant of the fact that Mosby's complaint contained additional causes of action, including claims based on alleged violations of Tennessee statutes. While his brief presents the broad issue of whether the trial court erred in granting the Defendants' motion to dismiss, only the aforementioned aspects of his complaint are discussed in his brief. "Though an issue may have been designated in the notice of appeal, a party's failure to brief it ordinarily constitutes waiver or

abandonment of the issue." ***Rector v. Halliburton***, No. M1999-02802-COA-R3-CV, 2003 Tenn. App. LEXIS 149, at \*25 (Tenn. Ct. App. Feb. 26, 2003). Thus, to the extent that Mosby fails to offer any argument as to how the trial court erred in dismissing his remaining claims, we must affirm any unchallenged rulings by the trial court. ***Id.***

### B.
### *Denial of Leave to Amend Complaint*

In response to the Defendants' Motion to Dismiss, Mosby filed a Motion for Leave to File an Amended Complaint pursuant to the Federal Rules of Civil Procedure. This motion sought to add an additional claim to his § 1983 action for failure to secure evidence favorable to his cause. Next, he filed a Notice of Supplemental Complaint seeking to add another defendant. Further, he filed a Motion for Leave to File Plaintiff's Amended Complaint pursuant to the Federal Rules of Civil Procedure asking to add "Terry Bentley, Jason Hayles, and Nurse Privit" as defendants, the same individuals referenced in his Notice of Amended Complaint filed in his opening salvo. Finally, he filed an Amended Complaint to allege new allegations of retaliation that allegedly occurred since his initial complaint, to include claims for harassment by Prison officials, failure to deliver a package, assault, and covering up the assault. Attached to the Amended Complaint were numerous exhibits setting forth the most recent grievances Mosby filed against Prison officials for the acts complained of in the Amended Complaint.

The trial court denied Mosby leave to amend his complaint, noting that (1) the new claims were unrelated to his initial § 1983 action or were not the proper subject of such action, and (2) the constitutional claims in his amended complaints failed to state a claim against the new defendants just as the same claims failed to state a claim against the original defendants. On appeal, Mosby argues that the trial court erred in denying him leave to amend his complaint.

Even though Mosby's complaint and amended complaints allege a federal cause of action under § 1983 based on perceived violations of his rights guaranteed by the United States Constitution and Tennessee law, he filed the action in a Tennessee state court. "It is as much the duty of the State as the Federal courts to uphold the constitution of the United States . . . ." ***Lynn v. Polk***, 76 Tenn. 121, 260 (Tenn. 1881). Thus, the courts of this state have concurrent jurisdiction with the federal courts to adjudicate claims arising under the laws of the United States unless the United States Congress, either implicitly or explicitly, acts to confine jurisdiction over a matter to the federal courts. ***Tafflin v. Levitt***, 493 U.S. 455, 458–59 (1990); ***Watson v. Barnett***, 789 S.W.2d 538, 542 (Tenn. 1989); ***Divine v. Unaka Nat'l Bank***, 140 S.W. 747, 749–50 (Tenn. 1911). We previously have recognized that, pursuant to this principle, our courts have concurrent jurisdiction over § 1983 actions. ***Pendleton v. Mills***, 73 S.W.3d 115, 129 n.23 (Tenn. Ct. App. 2001) (citing ***Poling v. Goins***, 713 S.W.2d 305, 307 (Tenn. 1986)).

While we often revert to the Federal Rules of Civil Procedure to interpret the Tennessee Rules of Civil Procedure, ***see Byrd v. Hall***, 847 S.W.2d 208, 214 (Tenn. 1993), we must evaluate the trial court's decision under the Tennessee Rules of Civil Procedure, not the Federal Rules of

Civil Procedure. Tennessee Rule of Civil Procedure 15 governs the amendment of a complaint, providing:

> A party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend the party's pleadings only by written consent of the adverse party or by leave of court; and leave shall be freely given when justice so requires.

TENN. R. CIV. P. 15.01 (2005). After Mosby filed his initial pleadings, the Defendants moved for an extension of time in which to respond, which the trial court granted. Immediately thereafter, the Defendants filed their Motion to Dismiss. It was while the motion to dismiss was pending that Mosby sought to amend his complaint.

In response to Mosby's efforts to amend his complaint, the Defendants, without citation to authority, urged the trial court to reject the amendments. They argued that, pursuant to Rule 15.01 of the Tennessee Rules of Civil Procedure, Mosby was required to request leave of court prior to amending his complaint. Nowhere in the record before this Court do we find an answer filed by the Defendants in response to Mosby's original complaint. It is only when a responsive pleading has been filed that the plaintiff must seek permission from the plaintiff or leave of court to amend his complaint. A motion to dismiss is not a responsive pleading, therefore, a plaintiff who seeks to amend his or her complaint prior to the filing of answer by the defendant may do so without leave of court. *Adams v. Carter County Mem'l Hosp.*, 548 S.W.2d 307, 309 (Tenn. 1977); *Lester v. Walker*, 907 S.W.2d 812, 814 (Tenn. Ct. App. 1995); *McBurney v. Aldrich*, 816 S.W.2d 30, 32–33 (Tenn. Ct. App. 1991).

We are cognizant of the fact that the Defendants also contend that the allegations in the amended complaint failed to state a claim for which relief could be granted as well. Ordinarily, this argument would fail where the trial court never addressed the issue of the sufficiency of the amended complaint, thereby necessitating a remand to the trial court to consider the allegations in the amended complaint. *See McBurney*, 816 S.W.2d at 33. As we previously have noted:

> An "amendment" to a complaint merely modifies the complaint which remains before the court as modified. However, an "amended complaint", complete in itself without adoption or reference to the original, supersedes and destroys the original as a pleading. *Louisville & N.R.Co. v. House*, 104 Tenn. 110, 56 S.W. 836 (1900). The motion for dismissal must be considered in relation to the amended complaint.

*Id.* In this case, however, the trial court examined the amended complaint and determined that it suffered from the same deficiencies as the original complaint or that the new claims initially could not be filed in the circuit court. Under similar circumstances we have noted:

However, the purpose of liberal leave for amendment is to permit the pleader to supply additional facts to support the position of the pleader rather than to restate the same facts stated in the former pleading. The proposed "amended complaint" has been carefully examined. It differs from the first complaint only in alleging different titles or positions of defendants, and that the defendants' actions had violated plaintiff's civil rights, and in praying for a declaration of rights, transfer to the State Division of Claims and attorney's fees.

If the first complaint fails to state a claim cognizable by the Courts of Tennessee, the proposed amended claim also fails to do so.

Plaintiff's brief fails to identify any right, common law or statute which requires relief as a result of the facts stated in the complaint and/or proposed amended complaint.

*Lester*, 907 S.W.2d at 814.

After independently reviewing the amended complaints filed by Mosby, we hold that they either suffer from the same deficiencies as the original complaint or constitute actions for which he initially must seek administrative redress.[3] Accordingly, we affirm the trial court's decision to reject Mosby's amended complaints.

## C.
### Denial of Injunctive Relief

Accompanying the initial documents filed in the trial court was Mosby's Motion for Preliminary Injunction. Therein, he asked the trial court to enter a temporary injunction pursuant to the Federal Rules of Civil Procedure enjoining the Defendants from further retaliation against him and to reinstate his prison job.

Once again, we must turn to the Tennessee Rules of Civil Procedure, and not the Federal Rules of Civil Procedure, to guide our resolution of this issue. The Tennessee Rules of Civil Procedure provide:

A temporary injunction may be granted during the pendency of an action if it is clearly shown by verified complaint, affidavit or other evidence that the movant's rights are being or will be violated by an adverse party and the movant will suffer immediate and irreparable injury, loss or damage pending a final judgment in the

---

[3] In this case, Mosby filed several documents with the trial court that amount to amended complaints. Tennessee Rule of Civil Procedure 15.01, however, only provides for one amendment as a matter of course before a responsive pleading is filed. *Boyd v. Prime Focus, Inc.*, 83 S.W.3d 761, 767 (Tenn. Ct. App. 2001). Thereafter, a party must secure the consent of the opposing party or leave of court to file additional amendments.

-14-

action, or that the acts or omissions of the adverse party will tend to render such final judgment ineffectual.

TENN. R. CIV. P. 65.04(2) (2005). The following factors generally must be considered by the trial court when deciding whether to grant a preliminary injunction:

(1) the threat of irreparable harm to the plaintiff if the injunction is not granted;
(2) the balance between this harm and the injury that granting the injunction would inflict on defendant;
(3) *the probability that plaintiff will succeed on the merits*; and
(4) the public interest.

ROBERT BANKS, JR. & JUNE ENTMAN, TENNESSEE CIVIL PROCEDURE § 4-3(j), at 4-22 (1999) (emphasis added); *see also Johnson v. City of Clarksville*, No. M2001-002273-COA-R3-CV, 2003 Tenn. App. LEXIS 413, at *11 (Tenn. Ct. App. June 3, 2003).

Mosby's alleged need for a preliminary injunction has been abrogated since we have determined, as did the trial court, that Mosby's complaint failed to state a claim for which relief could be granted. Accordingly, we affirm the trial court's decision to deny Mosby's request for injunctive relief.

### D.
### *Lawsuits by Inmates*

In the interest of thoroughness, we have expended the judicial resources of this state to address all of the issues raised by Mosby on appeal. Having done so, we come to another important aspect of our opinion in this case.

In 1996, the Tennessee General Assembly enacted provisions to govern civil litigation by state prisoners. *See* 1996 TENN. PUB. ACTS ch. 913. By enacting these statutes, the legislature "sought to balance the constitutional right to meaningful access to the courts with the legitimate state interest in preventing the judicial system from being flooded with unmeritorious or frivolous complaints, filed by inmates at taxpayer expense." *Mandela v. Campbell*, No. M2001-01956-COA-R3-CV, 2003 Tenn. App. LEXIS 56, at *8 (Tenn. Ct. App. Jan. 28, 2003) (citing *Pendleton v. Mills*, 73 S.W.3d 115, 125 (Tenn. Ct. App. 2001); *Davis v. Holland*, 31 S.W.3d 574, 577 (Tenn. Ct. App. 2000)); *see also Hawkins v. Tenn. Dep't of Corr.*, 127 S.W.3d 749, 754 (Tenn. Ct. App. 2002); *Williams v. Bell*, 37 S.W.3d 477, 479 (Tenn. Ct. App. 2000).

The provisions only apply "to a claim[4] by an inmate[5] in general sessions or a trial level court of record in which an affidavit of inability to pay costs is filed with the claim by the inmate." TENN. CODE ANN. § 41-21-802 (2003). "Except as otherwise provided by law, an action that accrued while the plaintiff inmate was housed in a facility operated by the department shall be brought in the county in which the facility is located." *Id.* § 41-21-803. If an inmate files a claim with an accompanying affidavit expressing the inability to pay costs, then he or she also must file a separate affidavit setting forth "[a] complete list of every lawsuit or claim previously filed by the inmate," to include "[t]he final result of the action, including dismissal as frivolous or malicious under this part or otherwise." *Id.* § 41-21-805.

In conjunction with his initial pleadings, Mosby filed an Inmate Affidavit Pursuant to T.C.A. §§ 41-21-801, 41-21-805 *et seq.* in the trial court. Therein, he listed six lawsuits he previously filed in federal court, but he did not state that any of the lawsuits had been dismissed for being frivolous or without merit. In their Motion to Dismiss, the Defendants asserted that Mosby had three cases dismissed by the United States District Court for the Western District of Tennessee as being frivolous or otherwise without merit. Appended to their motion were documents from the federal courts to support this assertion. Mosby does not deny that some of his previous lawsuits have been deemed frivolous by the federal courts. In fact, he frames the issue as "[w]hether the appellant is allowed to proceed In Forma Pauperis or not *do* [sic] *to three dismissals from U.S. District for Failure to State a Claim or Frivolous Complaint*." (emphasis added). (Appellant's Br. at 2). Furthermore, he states in his brief: "As for those claims that were ruled frivolous or failure to state a claim, in no way indicates a clear intent to abuse the courts and the in forma pauperis process."

In the trial court, the Defendants asserted that Mosby should not be allowed to proceed *in forma pauperis* in the present lawsuit. The Defendants did not expressly ask the trial court to dismiss the lawsuit pursuant to section 41-21-801 *et seq.* of the Tennessee Code. Instead, they asked that the trial court rule that Mosby could not proceed with the lawsuit until he paid the filing fee in full. The trial court initially ruled that Mosby could not be designated indigent for purposes of the proceedings in the lower court or on appeal. In turn, Mosby filed a Motion for Leave to Proceed In Forma Pauperis on Appeal. The trial court, without explanation, subsequently reversed its prior order and ruled that Mosby could proceed *in forma pauperis* on appeal.

On appeal, Mosby argues that the trial court erred in revoking his *in forma pauperis* status. As the trial court allowed Mosby to proceed *in forma pauperis* on appeal, we assume that he is

---

[4] A "claim" is defined as "any lawsuit or appeal field by an inmate except a petition for post-conviction relief." TENN. CODE ANN. § 41-2-801(1) (2003). We previously have held that the statutory scheme enacted by our legislature does not conflict with or frustrate the purpose of a § 1983 civil action. *Pendleton v. Mills*, 73 S.W.3d 115, 129 (Tenn. Ct. App. 2001). Accordingly, the statutory requirements in section 41-21-801 *et seq.* of the Tennessee Code remain applicable to a § 1983 action. *Id.* at 130.

[5] "Inmate" is defined as "a person housed in a facility operated by [TDOC], housed in a county jail, or housed in a correctional facility operated by a private corporation pursuant to a contract with the state or local government." TENN. CODE ANN. § 41-21-801(4) (2003).

contesting the initial order ruling that he could not proceed *in forma pauperis* at trial. Given our previous discussion of the merits of his case, there is no need to address whether he should be permitted to proceed *in forma pauperis* at trial as his case effectively has been ended by our ruling, subject only to further appellate review. Given the legislative directives in the statutory scheme at issue, however, we must go further.

The legislature provides that "[a] court may dismiss a claim filed by an inmate, either before or after service of process on the defendant, if the court finds that . . . [t]he claim is frivolous or malicious." TENN. CODE ANN. § 41-21-804(a)(2) (2003). In determining whether a claim is frivolous or malicious, the court may hold a hearing to consider whether: "(1) The claim has a chance of success; (2) The claim has a basis in law and in fact; and (3) The claim is substantially similar to a previous claim filed by the inmate in that the present claim arises from the same operative facts." *Id.* § 41-21-804(b), (c). In exercising its discretion, the trial court may dismiss the entire claim or only a portion of the claim. *Id.* § 41-21-811(a). The legislature further provides:

> *In no event* shall an inmate bring a civil action *or appeal* a judgment in a civil action or proceeding under this section if the inmate has, on three (3) or more prior occasions, while incarcerated or detained in any facility, brought an action *or appeal* in a court of this state or the United States that was dismissed on the grounds that it was frivolous, malicious, or failed to state a claim upon which relief may be granted, unless the inmate is under imminent danger of serious physical injury.[6]

*Id.* § 41-21-807(c) (emphasis added). The trial court did not act independently to invoke these provisions and dismiss Mosby's complaint outright. The Defendants, however, have now clarified their position to express the desire that we utilize these provisions to dismiss Mosby's appeal.

The instant case should never have been allowed to proceed to its present state. In any event, this appeal is so utterly lacking in merit that, utilizing the aforementioned provisions, we deem it to be frivolous. Having so labeled this case, we turn to the following legislative provision:

> Judgment may be rendered for costs at the conclusion of the suit, action, claim *or appeal as in other proceedings*. If the judgment against the inmate includes the payment of costs, the inmate shall be required to pay the full amount of costs ordered.

TENN. CODE ANN. § 41-21-808(a) (2003) (emphasis added). Regarding frivolous appeals, the legislature provides:

---

[6] Mosby never alleged in his complaint that he was facing threat of imminent danger or serious physical injury.

When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party *or of its own motion*, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

*Id.* § 27-1-122 (2000) (emphasis added).

Exercising our discretion, we remand this case to the trial court for the determination of all costs, expenses, and fees incurred in litigating this lawsuit, to include the costs associated with this appeal. Thereafter, the trial court is directed to enter an order assessing that amount to Mosby for filing a frivolous lawsuit and appeal. The collection of such amount is to be conducted in accordance with the provisions set forth in section 41-21-801 *et seq.* of the Tennessee Code.

**IV.**
**CONCLUSION**

For the aforementioned reasons, we affirm the trial court's decisions on the issues presented to this Court for review. Moreover, we remand this case to the trial court for the entry of an order directing the Appellant, Michael Mosby, to pay the costs, expenses, and fees associated with the filing of a frivolous lawsuit and appeal, with the amount to be collected in accordance with section 41-21-801 *et seq.* of the Tennessee Code.

_____
ALAN E. HIGHERS, JUDGE